1  Keke Feng (State Bar No. 289184)
   3525 Del Mar Heights Rd. 463
2  San Diego, CA 92130
   kfeng@flight-law.com
3  Telephone:  858-205-7887
   Facsimile:  858-205-7887
4
   **MOTLEY RICE LLC**
5  Mary Schiavo
   mschiavo@motleyrice.com
6  James R. Brauchle
   jbrauchle@motleyrice.com
7  28 Bridgeside Blvd.
   Mt. Pleasant, SC  29464
8  Telephone: (843) 216-9000
   Facsimile: (843) 216-9450
9
   *Attorneys for Plaintiffs*

10

11                    **UNITED STATES DISTRICT COURT**
                  **NORTHERN DISTRICT OF CALIFORNIA**
12

13  ┌─────────────────────────────────
    GUO FU YANG; XIAO LIAN JIANG;        )  Case No.
14  JUNBIAO YANG                         )
                                         )  **COMPLAINT FOR DAMAGES**
15  Plaintiffs,                          )
                                         )     1.  **NEGLIGENCE**
16  v.                                   )  (ASIANA AIRLINES)
                                         )
17  ASIANA AIRLINES, INC., a corporation; )    2.  **NEGLIGENCE**
18  THE BOEING COMPANY, a corporation;   )  (BOEING COMPANY)
    AIR CRUISERS COMPANY, LLC, a         )
19  corporation, d/b/a ZODIAC AERO       )     3.  **BREACH OF WARRANTY**
    EVACUATION SYSTEMS, a subsidiary of  )  (BOEING COMPANY)
20  ZODIAC AEROSPACE, S.A., a French     )
    societé anonyme,                     )     4.  **STRICT LIABILITY**
21                                       )  (BOEING COMPANY)
22  Defendants.                          )
                                         )     5.  **NEGLIGENCE**
                                         )  (AIR CRUISERS/ZODIAC AEROSPACE)
23
                                            6.  **BREACH OF WARRANTY**
24                                         (AIR CRUISERS/ZODIAC AEROSPACE)

25                                            7.  **STRICT LIABILITY**
                                           (AIR CRUISERS/ZODIAC AEROSPACE)
26
                                         **DEMAND FOR JURY TRIAL**
27

28

1   Plaintiffs GUO FU YANG, XIAO LIAN JIANG and JUNBIAO YANG, through the
2   undersigned attorneys, brings this action for damages against Defendant ASIANA AIRLINES,
3   INC. ("ASIANA"), Defendant THE BOEING COMPANY ("BOEING"), and Defendant AIR
4   CRUISERS COMPANY, LLC d/b/a ZODIAC AERO EVACUATION SYSTEMS, a
5   subsidiary of Defendant ZODIAC AEROSPACE, S.A. ("AIR CRUISERS"), as follows:

6   **JURISDICTION AND VENUE**

7   1.      This Court has jurisdiction under 28 U.S.C. § 1331(a), included but not limited
8   to the Convention for the Unification of Certain Rules for International Carriage by Air
9   (hereinafter the "Montreal Convention"), which the United States, the Republic of Korea, and
10  the People's Republic of China have ratified.  Defendant ASIANA is a signatory to the
11  Montreal Convention by means of the International Air Carrier Transportation Association
12  ("IATA") Intercarrier Agreement on Passenger Liability which specifically removes
13  limitations on damages.

14  2.      The Court also has jurisdiction under 28 U.S.C. § 1332.  This case involves a
15  dispute between Plaintiffs, GUO FU YANG, XIAO LIAN JIANG and JUNBIAO YANG
16  individuals with a principal and permanent residence in this District, and corporations based in
17  South Korea, the State of Illinois, the State of New Jersey and France, and the amount in
18  controversy exceeds the $75,000 jurisdictional minimum of this Court.

19  3.      Jurisdiction and venue is proper in this District pursuant to Article 33(1) of the
20  Montreal Convention because the air crash occurred in San Francisco, California, because
21  Plaintiffs' principal and permanent residence is in the Northern District of California, Plaintiff
22  GUO FU YANG's injuries and his families damages were incurred in California, Plaintiff
23  GUO FU YANG's destination was San Francisco, California and ASIANA operates services
24  for the carriage of passengers by air to and from San Francisco.

25  4.      Venue is also proper pursuant to 28 U.S.C. § 1391 and Local Rule 3-2 because
26  the crash itself and a substantial portion of the events and omissions giving rise to the claims
27  alleged herein occurred in this District.  Defendants have sufficient contacts because they
28  engage in substantial business and/or commerce in California.

5.      Plaintiff GUO FU YANG is married to Plaintiff XIAO LIAN JIANG.  Their son is JUNBIAO YANG.  They are residents of California.

6.      Plaintiff GUO FU YANG was a passenger on board ASIANA flight no. 214 with a destination of San Francisco, California when it crashed on July 6, 2013 at San Francisco International Airport (hereinafter "SFO").

7.      Defendant ASIANA is a foreign corporation domiciled in and existing under the laws of South Korea with its principal place of business located in Seoul, South Korea.  It is a registered business entity of the California Secretary of State, with an active status.  ASIANA routinely engages in continuous and systematic business in this District.

8.      Defendant ASIANA is, and at all times relevant was, a common carrier for hire in the business of soliciting and/or transporting passengers for regularly scheduled flights in and out of San Francisco International Airport.

9.      Defendant ASIANA is, and at all times relevant was, a carrier within the meaning of the Montreal Convention, operating round-trip flights between San Francisco, California, to Seoul, South Korea and throughout the world.

10.      Defendant ASIANA entered into the contract of carriage with GUO FU YANG and at all material times was in control of, and responsible for, their safe transport to San Francisco, California.

11.      Defendant THE BOEING COMPANY is a Delaware corporation with its principal place of business in the State of Illinois.  BOEING is, and at all times relevant was, registered as a business entity of the California Secretary of State with an active status.  BOEING also routinely engages in continuous and systematic business in this District.

12.      Defendant BOEING manufactured and sold the subject aircraft to ASIANA, and contracted with ASIANA to train its pilots, including those on board Flight 214 on July 6, 2013.

13.      Defendant AIR CRUISERS COMPANY, LLC is a Delaware limited liability company with its principal place of business in Wall Township in the State of New Jersey.  AIR CRUISERS COMPANY, LLC has been a subsidiary of ZODIAC AEROSPACE, S.A.

1  since 1987, and in 2013, AIR CRUISERS COMPANY, LLC began doing business as

2  ZODIAC AERO EVACUATION SYSTEMS to establish its presence as a member of the

3  ZODIAC AEROSPACE, S.A. group.

4       14.    Defendant ZODIAC AEROSPACE, S.A., is a French societé anonyme with a

5  Management Board and Supervisory Board with its principal place of business in Plaisir,

6  France.

7       15.    Defendant ZODIAC AEROSPACE, through its subsidiary AIR CRUISERS

8  COMPANY, LLC d/b/a ZODIAC AERO EVACUATION SYSTEMS, routinely engages in

9  continuous and systematic business in this District. The evacuation slides/rafts on ASIANA

10  Flight 214 were manufactured by AIR CRUISERS COMPANY, LLC. According to the 2012-

11  13 Annual Report of ZODIAC AEROSPACE, 55% of commercial aircraft are equipped with

12  "Zodiac Aerosafety evacuation slides," and AIR CRUISERS COMPANY, LLC d/b/a

13  ZODIAC AERO EVACUATION SYSTEMS, is the sole producer of such items for ZODIAC

14  AEROSPACE.

15  **FACTUAL BACKGROUND**

16       16.    On July 6, 2013, ASIANA Flight 214 was a BOEING 777-200ER, Registration

17  No. HL7742 (hereinafter "Subject Aircraft").

18       17.    The original BOEING 777-200 variant aircraft entered commercial service in

19  1995 followed by the extended-range 777-200ER in 1997.

20       18.    BOEING designed, manufactured, assembled, tested, serviced, and/or sold the

21  BOEING 777-200ER aircraft that crashed on July 6, 2013 and various components of the

22  Subject Aircraft including, but not limited to, the auto-throttle, autopilot, flight control

23  computers, warning systems, primary flight displays, overhead compartments, seats, and/or

24  seatbelts.

25       19.    BOEING maintains, operates, runs, supports, advertises, and/or promotes

26  twenty training campuses with more than 80 full-flight simulators around the world. At these

27  facilities, BOEING offers courses to train and transition pilots smoothly and efficiently and

28  keep them qualified, consistent with an airline's standards and procedures.

20. In 2002, BOEING contracted with ASIANA to train all of ASIANA's pilots at its own training facilities. In 2006, when ASIANA purchased the Subject Aircraft, BOEING opened a BOEING 777 training facility in South Korea near the Gimpo International Airport.

21. Plaintiff GUO FU YANG was among the 291 passengers on board the Subject Aircraft on July 6, 2013.

22. In addition to the passengers, there were also four members of the flight crew and twelve (12) flight attendants on board the Subject Aircraft on July 6, 2013.

23. The flying pilot of the Subject Aircraft was in the process of completing his Initial Operating Experience required to certify and/or qualify him to fly the BOEING 777 as pilot in command. Prior to Flight 214, he had only completed eight flight legs and 33 hours and 31 minutes of flight time on the 777 whereas to complete his Operating Experience, he was required by ASIANA to complete 20 flights and 60 hours of flight time.

24. The flying pilot had not previously landed a BOEING 777 at San Francisco International Airport.

25. The supervising pilot who was sitting in the right seat of the cockpit next to the flying pilot was on his first flight as a trainer on a BOEING 777, and his role was to supervise or instruct the flying pilot. While he had over 3,000 hours of flying time on the 777, he had not previously flown with the flying pilot prior to ASIANA Flight 214.

26. During landing, the relief first officer was sitting in the observer's seat in the cockpit while the relief captain, the fourth member of the flight crew, was sitting in the cabin, outside the cockpit.

27. On the morning of July 6, 2013, the prevailing weather conditions in and around San Francisco International Airport were clear sky, light wind, no wind shear, and visibility exceeding ten miles.

28. Approximately 17 nautical miles from San Francisco International Airport, Northern California Terminal Radar Approach Control ("TRACON") verified that the pilots aboard Flight 214 could see the airport and instructed Flight 214 to fly a visual approach on an assigned heading of 310 degrees to intercept final approach to Runway 28L. Visual approach

COMPLAINT FOR DAMAGES

1    was necessary because the glide slope transmitter for the Instrument Landing System approach

2    on Runway 28L had been out of service since June 1, 2013.

3         29.    Approximately 14 nautical miles from the airport, TRACON instructed Flight

4    214 to maintain an airspeed of 180 knots until five nautical miles from the airport to properly

5    space incoming aircraft.

6         30.    When Flight 214 was at an altitude of 1,600 feet, the autopilot was disengaged

7    by the flying pilot.

8         31.    At an altitude of 1,400 feet, Flight 214 had slowed to 170 knots, and at an

9    altitude of 1,000 feet, Flight 214 had slowed further to 149 knots.

10        32.    At an altitude of 600 feet, the control tower at San Francisco International

11   Airport cleared Flight 214 for landing on Runway 28L.

12        33.    As Flight 214 reached an altitude of 500 feet, the supervising pilot believed that

13   the aircraft was too low and that three red lights and one white light were showing on the

14   precision approach path indicator which indicated that the subject aircraft was too low.  At this

15   point, the flying pilot tried to pitch Flight 214 up to avoid going too low on the approach.

16        34.    Seven seconds before impact, one of the pilots called to increase airspeed, and

17   the airspeed was increased but this only increased the speed to 106 knots before the crash

18   because there was not sufficient time for the airspeed to increase to the desired speed before

19   the crash.

20        35.    Two or three seconds prior to impact, a tactile vibration on the throttle (also

21   known as a "stick shaker") notified the pilots that the plane was flying too slow, was about to

22   stall, and was losing its ability to stay aloft.  To avoid impact, the pilots attempted a go-around;

23   however, it was too late for the pilots to correct the situation.

24        36.    There was no warning or notification from the flight deck to the passengers that

25   Flight 214 was in danger.

26        37.    Flight 214's aft fuselage struck the seawall adjoining Runway 28L separating

27   the empennage from the main fuselage of the plane thus ejecting from the aircraft three teenage

28   passengers and two flight attendants who remained strapped in their rear jump seats.

38.     After the loss of the empennage, the nose of the aircraft tilted downward due to a shift in the center of gravity, and the rear of the aircraft lifted causing the aircraft to rotate counterclockwise approximately 330 degrees and crash into the infield adjoining Runway 28L approximately 2,300 feet from the seawall.

39.     The crash caused passengers, including Plaintiff GUO FU YANG, to be violently thrown about the cabin.  Luggage toppled from the overhead compartments. Passengers, held in place by lap-only seatbelts, were jolted in all directions, many slamming their heads against seat backs, armrests and fuselage.  Seats were dislodged throughout the cabin.  Oil spewed from the aircraft.  Passengers and crew waited ninety seconds after the aircraft had come to a full stop for the emergency doors and slides to open, and for the pilots to authorize evacuation.  The plane caught fire and quickly engulfed the subject aircraft.  In addition to the empennage of the plane being separated, half of the roof was ripped open. Three passengers died, and over 180 other passengers sustained physical injuries.

40.     The Federal Aviation Administration ("FAA") has issued regulations requiring that commercial aircraft be able to demonstrate that a full load of passengers can be evacuated within 90 second to prevent death or injury due to flashovers from external fuel fires.  In the case of Flight 214, the subject aircraft was not evacuated within 90 seconds after the plane came to a full stop on the side of the runway.

41.     Fire spread through the cabin.

42.     In an crash similar to Flight 214, a Turkish Airlines BOEING 737-800 crash-landed at Amsterdam Schiphol Airport when the auto-throttle setting disregarding the pilots' selected speed setting allowing the aircraft to drop 40 knots below the selected airspeed.  The speed reduction was not noticed until the aircraft reached 460 feet at which point the nose was pitched too high and the tail struck the ground as control was lost of the aircraft.

43.     Prior to the crash of Flight 214, the pilots did not discuss the approach speed and the fact that the auto-throttle had not maintained the requested 137-knot speed until it was too late to be corrected.  Neither the flying captain nor the relief first officer heard the aural

COMPLAINT FOR DAMAGES

low speed warning, and the supervising pilot stated that he heard the warning but that it was "too low, too low."

44. The pilots did not apply thrust and abort the landing in time for any possible recovery. The landing speed of 106 knots was far below the 137 knots recommended for the approach for landing, and a stall warning was made by the plane only seconds prior to impact.

45. Flight recorder data showed that the wing flaps were responding as normal and the engines were both producing power at the time of impact.

46. The pilots reported that they thought the aircraft's auto-throttle system was maintaining adequate speed.

47. The flying pilot was concerned about making a visual approach into San Francisco International Airport and he found the approach very stressful. He was aware that the glide slope transmitter was not functioning on Runway 28L. Because everyone else was successfully carrying out the visual approach, he did not think he could tell his supervising pilot that he could not do the visual approach. This fear of reporting problems to supervisors is not uncommon at ASIANA.

48. The ASIANA Flight 214 flight crew failed to observe basic procedures for a visual landing approach into San Francisco International Airport; failed to appropriately monitor flight conditions on approach; failed to appropriately communicate and react in the cockpit to deteriorating flight conditions, and failed to quickly and safely evacuate all those aboard upon the crash.

49. BOEING failed to meet its commitment to adequately train ASIANA pilots and to ensure that the aircraft was safely and adequately equipped.

50. BOEING and ASIANA knew or should have known that their training procedures were not up to par, and were putting passengers' lives at risk. In addition to simulator training at BOEING training facilities, ASIANA requires completion of an Initial Operating Experience for pilots new to a certain type of aircraft. This program calls for significantly less flying hours than what international standards deem appropriate to qualify pilots as sufficiently experienced. As stated above, the flying pilot had less than 35 hours of

777 flight time prior to Flight 214, and the supervising pilot had never supervised aboard a 777 previously.

51.     ASIANA Airlines has an unusually high rate of aborted landings at San Francisco International Airport.  ASIANA's number of aborted landings, or "go-arounds," is six to eight times greater than would be expected given the airline's total number of flights into San Francisco International Airport.  Such a "go-around" was suggested just prior to the crash of Flight 214.

52.     ASIANA's pilots are not properly trained to make a visual landing at SFO.

53.     BOEING knew or should have known that the design of its auto-throttle control systems, auto-pilot control systems, and/or low airspeed warning systems, their improper installation, and/or their defects, would result in dangerously inadequate warnings to pilots about low airspeed, a common cause of plane crashes.

54.     BOEING was aware that its low airspeed warning system was inadequate.  The BOEING 777 has a warning system which sounds a standard warning tone followed by a message on a display screen with the text "AIRSPEED LOW," but this same screen displays several other notifications at any given time.  During landing, pilots are routinely paying attention to numerous indicators and instructions simultaneously, as was the case with Flight 214.

55.     BOEING was on notice that this aural warning tone was inadequate following the 2009 Turkish Airlines BOEING 737-800 crash.  Since the Dutch investigation of that crash, BOEING has been retrofitting its 737 line of aircraft with a repeated aural command of "LOW AIRSPEED" rather than simply a warning tone.  Nevertheless, such a retrofitting has not occurred on BOEING's 777 aircraft such as Flight 214.

56.     Vehicle manufacturers, including airplane manufacturers, have known for decades the importance of restraining occupants in order to prevent and/or minimize occupant injuries in the event of a collision, crash or accident.  Automobile manufacturers long ago moved to including three-point harnesses and airbags in their vehicles in order to protect occupants.  Private airplane manufacturers have long ago moved to equip private airplanes

with three-point harnesses. BOEING failed to timely adopt three-point harnesses in its passenger planes, including the plane involved in the ASIANA Flight 214 crash, and should have adopted them years ago, including in the aircraft that crashed in this case. Three-point harnesses would have prevented or mitigated many of the passenger injuries in the ASIANA Flight 214 crash, including injuries to the Plaintiff herein.

57.    The emergency evacuation process was hindered by the malfunction of the evacuation slides manufactured by AIR CRUISERS COMPANY, LLC, d/b/a ZODIAC AERO EVACUATION SYSTEMS, a subsidiary of ZODIAC AEROSPACE, S.A.

58.    Two of the evacuation slides, 1R and 2R, deployed inside the cabin pinning two flight attendants in their jump seats until they were extricated and blocking those exits for passengers seeking to evacuate from the plane.

59.    The release mechanism [on the slides] had actually suffered catastrophic failure and was overwhelmed by the forces that were seen during the accident, which then forced the slide to release inboard and then inflate.

60.    The evacuation slides were not properly tested for circumstances of a crash such as that of Flight 214 thus resulting in a failure to appropriately operate. This defect caused the evacuation to be delayed as those evacuating the plane were required to find alternate means of exiting the plane even if doors 1R and 2R were their closest emergency exits, and to be forced to jump from the aircraft and fall to the ground.

61.    In addition to the two slides that deployed inside the cabin, multiple additional evacuation slides either failed to deploy at all or did not deploy fully. These included Doors 3L (did not deploy), 3R (partially deployed), and Door 4L (did not deploy).

62.    On September 30, 2010, AIR CRUISERS issued a Service Bulletin (No. 107-25-30) to replace the housing assemblies for evacuations slides/rafts manufactured by AIR CRUISERS because "[h]ousing assemblies supplied with 'unsealed' anodize may exhibit excessive levels of corrosion, which can affect release assembly functionality." This Service Bulletin was revised twice prior to the crash of Flight 214 – first on November 11, 2011 and then on July 27, 2012. The FAA issued Airworthiness Directive 2013-05-010 on March 29,

2013 related to this issue and required an inspection and corrective action be performed within 42 months.

63.      In its teardown inspections the various evacuation slides/rafts from Flight 214, 1R, 2R, 3L, 3R, and 4L all had blue housing indicating that they had been changed pursuant to the directive.

64.      Only two of the eight slides on board Flight 214 and manufactured by AIR CRUISERS deployed correctly requiring that the nearly 300 passengers on board the aircraft had to evacuate the aircraft either via those two deployed slides, out the rear of the plane where the tail end was missing, or jumping from one of the other doors where the slides did not deploy.  The height from Door 1R to the ground was 117 inches.  The height from Door 2L to the ground was 98 inches.  The height from Door 2R to the ground was 99 inches.  The height from Door 3L to the ground was 53 inches.  The height from Door 3R to the fuselage wreckage (and not the ground) was 18 inches.

65.      By manufacturing the evacuation slides/rafts in such a defective manner that the majority of them either malfunctioned or did not deploy at all, AIR CRUISERS COMPANY, LLC, d/b/a ZODIAC AERO EVACUATION SYSTEMS, a subsidiary of ZODIAC AEROSPACE, S.A., created an unnecessarily dangerous situation which imperiled the lives of those passengers seeking to evacuate Flight 214 after its crash on July 6, 2013.

## FIRST CLAIM FOR RELIEF

## NEGLIGENCE

### (Against Defendant ASIANA AIRLINES, INC.)

66.      Plaintiffs hereby incorporate by reference the allegations of each of the above paragraphs.

67.      On November 4, 2003, the United States signed, ratified and adopted as law the Montreal Convention, a multilateral international treaty which supplies rules governing international carriage by air.  Because the transportation provided to Plaintiff was between points in two different nations and because both these nations are signatories to the Montreal

Convention, the transportation was international carriage as defined by Article 1(2) of the Convention, and the Convention is therefore applicable to this action pursuant to Article 1(1).

68.     Pursuant to Article 17 of the Montreal Convention, the carrier is liable for damage sustained in case of death and bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

69.     Plaintiff GUO FU YANG suffered physical injuries and the injuries Plaintiff GUO FU YANG suffered took place on board the Subject Aircraft.  Plaintiffs XIAO LIAN JIANG and JUNBIAO YANG suffered harm losses and damages as a result of GUO FU YANG's injuries.

70.     Pursuant to Article 17 of the Montreal Convention, Defendant ASIANA AIRLINES, INC. is liable for damages sustained by Plaintiff GUO FU YANG as a passenger aboard Flight 214, as said injuries and damages occurred while GUO FU YANG was on board the Subject Aircraft and/or in the course of the operations of disembarking from the Subject Aircraft.

71.     Defendant ASIANA AIRLINES, INC. is also liable for loss of consortium and other damages suffered by Plaintiffs GUO FU YANG and XIAO LIAN JIANG, husband and wife, and their son JUNBIAO YANG in that said claims derive from the injuries suffered by passenger Plaintiff GUO FU YANG and are cognizable under California law.

72.     Defendant ASIANA AIRLINES, INC. was in control of Flight 214 and owed non-delegable duties to all passengers for its safe operation at all modes of flight, including the landing approach into San Francisco International Airport on July 6, 2013.

73.     Defendant ASIANA AIRLINES, INC. breached those duties by failing to observe the most fundamental procedures for a visual landing approach into San Francisco International Airport, failing to appropriately monitor flight conditions on approach, failing to communicate and react in the cockpit to those flight conditions, and failing to evacuate passengers and crew as safely and quickly as possible.

74. Defendant ASIANA AIRLINES, INC.'s liability under the Montreal Convention is absolute up to 113,100 Special Drawing Rights ("SDR") pursuant to Article 2(1).

75. Defendant ASIANA AIRLINES, INC. is also liable to Plaintiffs under Article 21(2) of the Montreal Convention for all personal injury damages exceeding 113,100 SDR unless ASIANA AIRLINES, INC. proves that (a) Plaintiffs' injuries were not due to the negligence or other wrongful act or omission of ASIANA or its servants or agents; or (b) the injures were solely due to the negligence or other wrongful act or omission of a third party.

76. As a direct and proximate result of Defendant ASIANA AIRLINES, INC.'s acts and omissions, including gross negligence and recklessness of the flight crew on Flight 214 and the inadequate training and supervision Defendants provided to said flight crew, which caused the crash of ASIANA Flight 214, Plaintiffs were injured and damaged as alleged herein and will continue to suffer from physical, mental, and economic injuries for the foreseeable future.

77. The crash of ASIANA Flight 214 occurred due to the negligence, wrongful acts and omissions of Defendants ASIANA, BOEING, ZODIAC AEROSPACE, S.A. d/b/a ZODIAC AERO EVACUATION SYSTEMS, and AIR CRUISERS COMPANY, LLC d/b/a ZODIAC AERO EVACUATION SYSTEMS and their servants and agents, and not due to the sole negligence or other wrongful act or omission of any third party.

WHEREFORE, Plaintiffs pray for judgment as fully set forth herein.

## SECOND CLAIM FOR RELIEF

## NEGLIGENCE

### (Against Defendant THE BOEING COMPANY)

78. Plaintiffs hereby incorporate by reference the allegations of each of the above paragraphs.

79. At all relevant times, Defendant BOEING was the designer, manufacturer, and/or seller of the BOEING 777-200ER.

80.    Defendant BOEING was in the business of designing, testing, manufacturing, selling, assembling, building, distributing, marketing, and/or inspecting its 777-200ER aircraft, including the Subject Aircraft.  BOEING knew or should have known that the auto-throttle control system would not engage when the aircraft was in specific settings; that the auto-throttle control system on its aircraft did not provide adequate warnings; and that its low airspeed warning was inadequate with a sole aural warning tone.

81.    At all relevant times, Defendant BOEING oversaw and managed the training protocols and training facilities which trained ASIANA's pilots.  BOEING knew or should have known that ASIANA pilots were not adequately trained in basic landing and safety management protocols, and that pilots of the Subject Aircraft were not qualified to operate Flight 214 on July 6, 2013.   These pilots were not trained to constantly monitor aircraft airspeed; to safely operate the auto-throttle control system aboard the Subject Aircraft; to safely operate the auto-pilot system aboard the Subject Aircraft; to safely operate and respond to the flight director aboard the Subject Aircraft; to safely operate, monitor and respond to the flight systems aboard the Subject Aircraft; to operate the Subject Aircraft at safe airspeeds given the flight conditions; to timely recognize and safely respond to low airspeeds given the flight conditions; and to safely operate the Subject Aircraft in both visual landings and in instrument-controlled landings.

82.    At all relevant times, Defendant BOEING knew or should have known that the use of lap belts would cause or contribute to otherwise avoidable injuries.  Plaintiff GUO FU YANG and those other passengers seated in economy class were provided with only lap-belts, and only a few business class seats on the Subject Aircraft has passenger restraints that included chest/torso restraints.  Defendant BOEING knew or should have known that three-point harnesses are much safer than a lap belt alone.

83.    As a direct and legal result of Defendant BOEING's negligence, carelessness, gross negligence, recklessness and/or otherwise wrongful acts and/or omissions, Plaintiffs' sustained the injuries and damages set forth herein.

WHEREFORE, Plaintiffs pray for judgment as fully set forth herein.

**THIRD CLAIM FOR RELIEF**

**BREACH OF WARRANTY**

**(Against Defendant THE BOEING COMPANY)**

84.    Plaintiffs hereby incorporate by reference the allegations of each of the above paragraphs.

85.    Defendant BOEING was the designer, manufacturer, distributor, and/or seller of the BOEING 777-200ER at issue in this case.

86.    Defendant BOEING represented expressly and/or impliedly that the Subject Aircraft, its parts and components, and its accompanying warnings and instructions, were safe and appropriate for the purpose of commercial passenger air travel, were of merchantable quality, and were free from defects.

87.    Plaintiffs were an intended third-party beneficiary of Defendant BOEING's warranties as ticketed passengers of ASIANA Flight 214.

88.    The crash of ASIANA Flight 214 and the injuries and damages suffered by Plaintiffs resulted directly from BOEING's breach of the aforementioned warranties.

WHEREFORE, Plaintiffs pray for judgment as fully set forth herein.

**FOURTH CLAIM FOR RELIEF**

**STRICT LIABILITY**

**(Against Defendant THE BOEING COMPANY)**

89.    Plaintiffs hereby incorporate by reference the allegations of each of the above paragraphs.

90.    Defendant BOEING designed, manufactured, assembled, distributed, tested, maintained, serviced, inspected and/or sold BOEING 777-200ER aircraft, including the Subject Aircraft, for the purpose of commercial passenger air transportation.

91.    At all relevant times, ASIANA operated and used the Subject Aircraft for the purposes for which it was manufactured, designed, inspected, sold and intended to be used, in a manner reasonably foreseeable to Defendant BOEING.

COMPLAINT FOR DAMAGES

92.     The Subject Aircraft proved to be defective and not airworthy and/or not crashworthy as a result of BOEING's defective design, manufacture, distribution, testing, maintenance, service, and/or inspection of the Subject Aircraft.

93.     The crash of ASIANA Flight 214 and the injuries and damages suffered by Plaintiffs resulted directly from BOEING's defective design, manufacture, distribution, testing, maintenance, service, and/or inspection of the Subject Aircraft.

WHEREFORE, Plaintiffs pray for judgment as fully set forth herein.

## FIFTH CLAIM FOR RELIEF

## NEGLIGENCE

**(Against Defendant AIR CRUISERS COMPANY, LLC d/b/a ZODIAC AERO EVACUATION SYSTEMS, a subsidiary of Defendant ZODIAC AEROSPACE, S.A.)**

94.     Plaintiffs hereby incorporate by reference the allegations of each of the above paragraphs.

95.     Defendant AIR CRUISERS COMPANY, LLC d/b/a ZODIAC AERO EVACUATION SYSTEMS, a subsidiary of Defendant ZODIAC AEROSPACE, S.A., was the designer, manufacturer, and/or seller of the evacuation slide/raft assemblies that were installed on the Subject Aircraft.

96.     Defendant AIR CRUISERS COMPANY, LLC d/b/a ZODIAC AERO EVACUATION SYSTEMS, a subsidiary of Defendant ZODIAC AEROSPACE, S.A., knew or should have known that the evacuation slide/raft assemblies would be susceptible to corrosion and/or would not be able to withstand a crash such as the one that occurred on July 6, 2013 aboard the Subject Aircraft.  Five of the eight evacuation slides/rafts that were available to be used for disembarkation aboard the Subject Aircraft following the crash either failed to deploy at all or deployed inside the cabin of the Subject Aircraft creating additional risks of delay and injury in Plaintiff's disembarkation from the Subject Aircraft.

97.     Defendant AIR CRUISERS COMPANY, LLC d/b/a ZODIAC AERO EVACUATION SYSTEMS, a subsidiary of Defendant ZODIAC AEROSPACE, S.A., owed a

duty to the passengers of ASIANA Flight 214 to provide a safe means of disembarkation from the Subject Aircraft in the event of a crash.

98.     As a direct and legal result of Defendant AIR CRUISERS COMPANY, LLC's d/b/a ZODIAC AERO EVACUATION SYSTEMS, a subsidiary of Defendant ZODIAC AEROSPACE, S.A., negligence, carelessness, gross negligence, recklessness and/or otherwise wrongful act and/or omissions, Plaintiff GUO FU YANG was exposed to ever greater risk and injury due to the lack of functioning evacuation slides thus creating a significantly dangerous situation and risking further injury to Plaintiffs.

WHEREFORE, Plaintiffs pray for relief as set forth herein.

## SIXTHTH CLAIM FOR RELIEF
### BREACH OF WARRANTY

**(Against Defendant AIR CRUISERS COMPANY, LLC d/b/a ZODIAC AERO EVACUATION SYSTEMS, a subsidiary of Defendant ZODIAC AEROSPACE, S.A.))**

99.     Plaintiff incorporates and re-alleges each of the allegations set forth above as though fully set forth herein.

100.     Defendant AIR CRUISERS/ZODIAC AEROSPACE was the designer, manufacturer, supplier evacuation slides/raft assemblies that were installed on the subject aircraft

101.     Prior to the crash of ASIANA Flight 214, Defendant AIR CRUISERS/ZODIAC AEROSPACE expressly and/or impliedly warranted and represented that the evacuation slides/raft assemblies, including their component parts and instruments, and in conjunction with the instructions and warnings given by AIR CRUISERS/ZODIAC AEROSPACE, were airworthy, of merchantable quality, both fit and safe for the purpose of commercial air travel for which they were designed, intended and used.   Additionally, Defendant AIR CRUISERS/ZODIAC AEROSPACE further warranted that the evacuation slides/rafts assemblies and/or their component parts were free from all defects.

102.    Defendant AIR CRUISERS/ZODIAC AEROSPACE breached said warranties in that the evacuation slides/rafts assemblies were not airworthy, of merchantable quality, or fit and safe for the purposes for which they were designed, intended and used, and free from all defects as set forth above.

103.    Plaintiff, GUO FU YANG, as passenger of ASIANA Flight 214, was an intended third-party beneficiary of Defendant AIR CRUISERS/ZODIAC AEROSPACE 's warranties that the evacuation slides/raft assemblies on ASIANA Flight 214 were airworthy, of merchantable quality, both fit and safe for the purposes for which they were designed, intended and used, and free from all defects.

104.    As a direct and legal result of Defendant AIR CRUISERS/ZODIAC AEROSPACE's negligence, carelessness, gross negligence, recklessness and/or otherwise wrongful acts and/or omissions hereinabove set forth, Plaintiff has suffered the injuries and damages hereafter set forth.

105.    As a legal result of the wrongful conduct of AIR CRUISERS/ZODIAC AEROSPACE set forth above, Plaintiff was injured in Plaintiff's health, strength, and activity, and has sustained injuries to Plaintiff's body and/or mind, all of which has caused Plaintiff great physical, mental, emotional, and nervous pain and suffering.

106.    By reason of the wrongful conduct of AIR CRUISERS/ZODIAC AEROSPACE set forth above, Plaintiff was required to and continues to employ physicians and other health care providers to examine, treat, and care for Plaintiff's injuries, and has incurred, and will continue to incur, medical and incidental expenses for such examination, treatment, rehabilitation, and care in an amount according to proof.

107.    By reason of the incident, Plaintiff has suffered a loss of income and/or a loss of earning capacity, in an amount according to proof.

108.    By further reason of the premises, Plaintiff suffered the loss of Plaintiff's personal property, including but not limited to personal effects and items in checked in luggage and carry-on items, in an amount according to proof at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

**SEVENTH CLAIM FOR RELIEF**

**STRICT LIABILITY**

**(Against Defendant AIR CRUISERS COMPANY, LLC d/b/a ZODIAC AERO EVACUATION SYSTEMS, a subsidiary of Defendant ZODIAC AEROSPACE, S.A.)**

109.     Plaintiffs hereby incorporate by reference the allegations of each of the above paragraphs.

110.     Defendant AIR CRUISERS COMPANY, LLC d/b/a ZODIAC AERO EVACUATION SYSTEMS, a subsidiary of Defendant ZODIAC AEROSPACE, S.A., designed, manufactured, inspected and/or sold the evacuation slide/raft assemblies that were installed on the Subject Aircraft.

111.     At all relevant times, ASIANA used the evacuation slide/raft assemblies for the purposes for which they were manufactured, designed, inspected, sold, and intended to be used, in a manner reasonably foreseeable to Defendant AIR CRUISERS COMPANY, LLC d/b/a ZODIAC AERO EVACUATION SYSTEMS, a subsidiary of Defendant ZODIAC AEROSPACE, S.A..

112.     The evacuation slide/raft assemblies were defective, dangerous, unsafe and/or not crashworthy as a result of Defendant AIR CRUISERS COMPANY, LLC's d/b/a ZODIAC AERO EVACUATION SYSTEMS, a subsidiary of Defendant ZODIAC AEROSPACE, S.A., defective design, manufacture, distribution, testing, maintenance, service, warnings, directives and/or inspection of evacuation slide/raft assemblies on the Subject Aircraft.

113.     By manufacturing the evacuation slides/rafts in such a defective manner that the majority of them either malfunctioned or did not deploy at all, AIR CRUISERS COMPANY, LLC d/b/a ZODIAC AERO EVACUATION SYSTEMS, a subsidiary of ZODIAC AEROSPACE, S.A., created an unnecessarily dangerous situation which imperiled the lives of those passengers seeking to evacuate Flight 214 after its crash on July 6, 2013.

114.     As a direct and legal result of Defendant AIR CRUISERS/ZODIAC AEROSPACE negligence, carelessness, gross negligence, recklessness and/or otherwise

wrongful acts and/or omissions hereinabove set forth, Plaintiff has suffered the injuries and damages hereafter set forth.

115. As a legal result of the wrongful conduct of AIR CRUISERS/ZODIAC AEROSPACE set forth above, Plaintiff was injured in Plaintiff's health, strength, and activity, and has sustained injuries to Plaintiff's body and/or mind, all of which has caused Plaintiff great physical, mental, emotional, and nervous pain and suffering.

116. By reason of the wrongful conduct of AIR CRUISERS/ZODIAC AEROSPACE set forth above, Plaintiff was required to and continues to employ physicians and other health care providers to examine, treat, and care for Plaintiff's injuries, and has incurred, and will continue to incur, medical and incidental expenses for such examination, treatment, rehabilitation, and care in an amount according to proof.

117. By reason of the air crash, Plaintiffs have suffered a loss of income and/or a loss of earning capacity, in an amount according to proof.

118. By further reason of the premises, Plaintiff GUO FU YANG suffered the loss of Plaintiff's personal property, including but not limited to personal effects and items in checked in luggage and carry-on items, in an amount according to proof at trial.

WHEREFORE, Plaintiffs pray for judgment as fully set forth herein.

## PRAYER FOR RELIEF

Plaintiffs pray for judgment against Defendants as follows:

A. Damages to be awarded in an amount to be determined at trial, including general, special, and compensatory damages, according to proof;

B. Damages to be awarded for the pain, suffering, and emotional distress experienced by Plaintiffs as a result of their bodily injuries, according to proof;

C. Damages to be awarded for the loss of consortium suffered by Plaintiffs GUO FU YANG and XIAO LIAN JIANG due to their injuries;

D. Punitive damages to be awarded against THE BOEING COMPANY and AIR CRUISERS COMPANY, LLC d/b/a ZODIAC AERO EVACUATION SYSTEMS, a

subsidiary of ZODIAC AEROSPACE, S.A., in an amount to be determined at trial, to ensure that Defendants will be deterred from engaging in similar conduct in the future;

E. Pre- and post-judgment interest on all damages as allowed by the law;

F. Any other damages to which Plaintiffs may be entitled under applicable law;

G. Injunctive relief mandating that all ASIANA pilots receive comprehensive training and demonstrate minimum proficiency in landing procedures and basic safety protocols;

H. Costs incurred in bringing this suit;

I. Attorneys fees; and

J. Such other and further relief as the Court may deem just and proper.


Dated:  May 29, 2014                          Respectfully submitted,

                                             By:  ___/s/Keke Feng_____

                                             Keke Feng, Esq, (State Bar no. 289184)
                                             3525 Del Mar Heights Rd. 463
                                             San Diego, CA 92130
                                             kfeng@flight-law.com
                                             Telephone:  858-205-7887
                                             Facsimile:  858-205-7887

                                             Mary F. Schiavo
                                             mschiavo@motleyrice.com
                                             James R. Brauchle
                                             jbrauchle@motleyrice.com
                                             MOTLEY RICE LLC
                                             28 Bridgeside Blvd.
                                             Mount Pleasant, SC 29464
                                             Telephone: 843.216.9000
                                             Facsimile: 843.216.9450

                                             *Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all claims for which a jury trial is available pursuant to Fed. R. Civ. P. 38(a) and (b).

Dated:  May 29, 2014                           Respectfully submitted,

By:   /s/Keke Feng

Keke Feng, Esq, (State Bar no. 289184)
3525 Del Mar Heights Rd. 463
San Diego, CA 92130
kfeng@flight-law.com
Telephone:  858-205-7887
Facsimile:  858-205-7887

Mary F. Schiavo
mschiavo@motleyrice.com
James R. Brauchle
jbrauchle@motleyrice.com
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Telephone: 843.216.9000
Facsimile: 843.216.9450

*Attorneys for Plaintiffs*